UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

42 USC 1983, COMPLAINT:

PLAINTIFF:

Mario Naranjo



v.

DEFENDANT:

Bobby Thompson

Arnulfo Gomez

Geo Group inc.

George Zoly

Clarence Antony

Richard Clanton

Anne Newman

Christopher Wheeler

Normen Carlson

P11 CV105

CASE NO:_____

NARANJO DEMANDS A JURY TRIAL FOR

THIS COMPLAINT:

(A)

## I. Previous lawsiuts:

Naranjo, has never filed a lawsuit in either state or federal Courts:

## II. Place of confinement:

Reeves County Detention Center 3. P.O.BOX 2038, Pecos Texas, 72779-2038

## III. Exhaustion of remedies:

See statement of claim pages 1-4.

## IV. Parties to suit:

See page A2.

## V. STATEMENT OF CLAIM:

See attached pages 1-19.

## VI. Relief sought:

See pages 17-18.

## VII. General background information:

A. Naranjo, has never been known by or used an alias.

B. Mario Naranjo # 30472-004

## VIII. Since Naranjo has never been sanctioned for a suit:

Naranjo is aware that providing any false or deliberately misleading information may result in sanctions being imposed: The santions the Court may impose include, but are not limited to monetary santions and/or dismissal of this action with prejudice:

**Parties to suit:**

Plaintiff: Mario Naranjo # 30472-004, Reeves County Detention Center 3, P.O.BOX 2038  Pecos Texas 72779-2038

**Defendants:**

Booby Thompson (Warden) Reeves County Detention Center 3, P.O.BOX 2038, Pecos Texas 72779-2038.

Arnulfo Gomez (Sheriff) County supervisor for Reeves County Detention Center 3, 5th & Oak st.s Pecos Texas, 72779.

Geo Group inc. una tark place suite 700, 621 n.oeste, Boca Raton FL. 33487.

George Zoly Cheif executive officer Geo Group inc. una tark place suite 700, 621 n. oeste, Boce Raton, FL. 33487.

Clarence Antony President, Geo Group inc. una tark place suite 700, 621 n. oeste, Boca Raton FL 33487.

Richard Clanton, Chairman of the Board Geo Group inc. una tark place suite 700, 621 n oeste, Boca Raton FL. 33487.

Anne Newman Secratary Geo Group inc. una tark place suite 700, 621 n. oeste, Boca Raton Fl.33487

Christopher Wheeler, Boardmember Geo Group inc. una tark place suite 700, 621 n oeste, Boca Raton FL. 33487.

Norman Carlson, Boardmember Geo Group inc. una tark place suite 700, 621 n. oeste, Boca Raton FL. 33487.

**(A2)**

## STATEMENT OF CLAIM

Attached the Court will find copies of several efforts as to greivances and inmate request forms submitted by Naranjo, as well as (2) motions that were filed in both the Appellate and District Courts. (see exihibit G1).

Grievances were flagrantly ignored, never responded to by either Reeves County Detention Center III (RCDC-III), nor Geo Group staff. Such blatant failure to respond is the 'norm' at this facility.

1) The facility has an unwritten policy, to ignore or destroy grievances that allege serious and complex issues as these in the complaint.

2) The private Prison facility, is under financial profit expectations, thus any grievances and civil rights actions that can effect profits are to be kept in check at all costs.

3) The two inmate request forms one dated 10-7-2009 and the other 10-12-2009, were directed to Bobby Thompson (Warden), who answsered the first in a way as to initiate confusion and distract, or negate the credibility of the request and subject. In fact the response was nothing less than buffoonery, childish and misguided word games.

Mr. Thompson, realizing Naranjo, was neither dence, or confused by his efforts to navigate around the subject, he (Mr. Thompson), refused to respond and intructed staff to ignore any further request or efforts at grievances, literally

(1)

destroy, or discard any filling Naranjo, may file concerning theses complex issues of constitutional magnitudes.

Mr. Thompson, knowingly, deliberately with wanton disregard of the Constitutional rights of the Plaintiff, and with deliberate indifference to the injuries and damages that the denial of Due Process would cause, he (Mr. Thompson), encouraged the staff to deliberately ignore or disregard the avenue required by 28 U.S.C. 1915, and the PLRA, criterias, to deter and prevent the Plaintiff, from exercising his Constitutional right to access the Courts. (Violation of U.S Const. Amend. 1, 5, 14, and the policy statement of the Federal Bureau of Prisons.)

Mr. Thompson, also achieved the alleged rationale of immunity, by knowingly shifting his responsibility to Mr. Bullock, (Coordinator of case managment) whom responded utilizing his trademark fabrications and pleas of ignorance, which are iillustrated on the request forms. The Plaintiff, undettered seeked further clarification and requested the names of the fabricated Homeland security officers and staff which Mr. Bullock mentioned in a grievance on 10/22/2011,.

Mr. Thompson, again ignored the grievance. Mr. Thompson, in his personal and official capacity, deliberately violated Naranjo's Procedural Due Process right's, and speciifically prevented or attempted or conspired to prevent access to the Court.

VIOLATION OF CONSTITUTIONAL RIGHTS: BY BOBBY THOMPSON BOTH IN HIS PERSONAL AND OFFICIAL CAPACITY:

(2)

Mr. Thompson, is warden of a facility, and as such must be held responsible for the responses and actions taken by the staff in his direction and on his behalf. In the instant case Mr. Thompson, transferred the responsibility to Mr. Bullock, and as such had to have reviewed and examined the reponse. At the very least Mr. Bullock would have had to record the reply which is on a legal document that the Courts would review if the matter was to be presented under law as it is now.

Mr. Thompson, is the individual which personally and through staff trained Mr. Bullock in the art of responses for the Facility. More persuasive is the fact that Mr. Bullock would not attempt to repond for Mr. Thompson erroneously, without the consent and knowledge of Mr. Thompson.

When Mr. Thompson, transferred responsibility to Mr. Bullock, and allowed the fabricated response he made clear he was deliberately indifferent to the violations being chall- enged by the Plaintiff. That type of violation is not super- ficial, because a Warden of a Facility for the United States would be charged with knowledge of the U.S. Constitution, and an would know that to deny Due Process and access to the Courts deliberately violates those rights.

The importance of procedural Due Process has been clear by the Courts in cases like, <u>Harden</u> v. <u>Pataki</u>, <u>320</u>, <u>F3d.</u> <u>1289 (11th Cir.) at 1301, saying</u> " Because the right to proced- ural Due Process is absolute' in a the sense that it dose not depend upon the merits of a claimants substantive assertions, and because of the importance to organized society, the denial of procedural Due Process is actionable for actual damages with-

(3)

out proof of actual injury. Thus the Plaintiff, may be able
to recover nominal compensatory, even punitive damages for
constitutional and statutory violations he is able to prove.
GEO GROUP WARDEN BOBBY THOMPSON AND SHERIFF ARNULFO GOMEZ
CONSPIRED TO CONFINE NARANJO IN AN ENVIRONMENT THAT VIOLATED
HIS FEDERALLY PROTECTED RIGHTS:

    1. Naranjo, since his arrival at RCDC-III, has been
deliberately housed in an environment that created unnecessary
stress, tension and placed Naranjo, in constant uncontrolled
and unnecessary danger with wonton disregard for Naranjo's feder-
ally protected right to be free of crual and unusual punishment.

    2. Even taking into account the Supreme Courts ruling
in Rhodes v Chapman, 452, US 337, 101, S.CT. 2395 69 LED 2d.
59, (1981), holding that double celling in a 63, sq.ft. cell
designed to house one inmate did not violate the 8th. Amendment,
or the 5th. Circuits ruling in Ruiz v Estelle 679 F2d. 1115,
at 1140-1148, (1982), calling for inmates to housed in Dormitory
that afford them 40 sq.ft. (Excluding, Bath, Toilets, and activ-
ity areas), the on or about 20 sq.ft of personal living space
afforded Naranjo, and other inmates at RCDC-III, is but a fract-
ion of what the Courts have found to hablitative and healthy.
The lack of privacy, increased tension, increased risk of the
decease along with the exposure to unnecessary and controled
danger are the direct result of dangerous alterations performed
to RCDC-III, in order to increase corporate profits, with
complete indifference to Naranjo's health and safety.

    3. RCDC-III, was origanally designed to house the inmate
population in 3, separate Pod's A, B, C, each consisting of

6, Dormitories and 6, Day Rooms. Each Pod was designed to house 288, inmates safely. That all changed when Geo Group inc. leased RCDC-III, from Reeves County, in order to fulfill a Bureau Of Prison contract to operate a processing and deportation center for undocumented or undesirable aliens. Under the supervision oof Sheriff Arnulfo Gomez, the county supervisor for RCDC-III, and Geo Group, executives 4, of the 6, Day Rooms werer converted into Dormitories for an additional 192, inmates deliberately and recklessly bringing the total inmate population up to a dangerous 166% of design capacity.

4. In spite of the increased profits that resulted from the larger inmate population, none of RCDC-III's facilities were expanded to meet the higher demand requirements. The medical delivery system remains under staffed, ill equipped and plagued by fraud. The security staff is uncertified, inexpeirenced and in spite of the institutions history of violent uprising's the inmate to guard ratio hovers around 90, to 100, to 1, which is extemely dangerous. The library remains only able to handle 35, inmates at a time and inmates are frequently turned away due to overcrowding. The dinning room is extemely overcrowded and inadquate for the size of the inmate population as well. The Fire saafety systems and evacuation plans are woefully defic- ient or totally non-existent and also plagued by fraud.

5. on december 12, 2008, a well documented riot' accur- red that resulted in the taking of hostages and the burning down of the recreation building and damaging by Fire, Smoke, and water in spite of the automatic sprinkler sysytems that were suppose to prevent such a thing. Yet Naranjo, is housed

(5)

in a Dormitory that lacks any emergency door leading directly

from the inmate living area out of the building in the event

of another such catastrophe. The Facilities own evacuation plan

evacuation plan calls for the entire inmate population of 488,

to exit through 1, 3ft. by 7ft. door located on the South end

of the Pod, because the North door was fenced of and gated after

the riot and cannot be opened automatically rendering it useless

as an emergency door. In effect leaving just 1, Fire Exit which

is to small and inadequately constructed to serve effectively

during an actual Fire or other emergency. Which creates the

very real and unnecessary potential for seriuos injury in the event

of another disaster.See Ruiz at 1140,.

   6. In Battle v Anderson, 654, F2d. 395, (10th. Cir.

1977), the Court explains that " Aprison is a closed ecosystem

and persons are sent to prison as punishment, not for punishment

and it is incombent on the incarcerating body to provide the

iindividual with a healthy habilitative environment, anything

less would be to subject the individual to further punishment

than intended by the sentencing Court." Also at Battle at 395,

" Water, Fire protection, Air, and Food are necessities of life

and minimum space to call owns own a primary psychological necessity.

   7. Unlike most complaints of this type that are brought

before this Court. Naranjo's complaint among other thing's

involves the deliberate and reckless indangering of his life and

the wonton disregard of Naranjo's Federally protected rights for

the sake of Corporate profits. Which is certainly actionable under

42 USC 1983, which prohibits deprivation of Constitutional rights

under the color of law. As the Supreme Court has taught treatment

(6)

a prisoner receives in prison and conditions under which he is confined are subject to scrutiny under the 8th. Amendment. Also Helling v McKinney 509, US 25, 31, 113, S.CT. 2475, LED 2d. 22, (1993), and Smith v Wade 461 US 30, 75, LED2d. 632, (1983) saying 42 USC 1983, allows punitive damage awards in 1983, cases if the respondant engaged in reckless indifference to Federally protected rights.

8. Even though Warden Bobby Thompson, had not arrived at RCDC-III, when the dangerous alterations were performed to RCDC-III, Thompson, certainly never took any steps to correct the dangerous, unconstitutional living conditions that still exist today and is, as he should be, held personally responsible for them.

9. Like the Texas board of corrections in Ruiz at 1136-1137, the Board of Directors of Goe Group inc. George Zoly (CEO), Clarence Antony (PRES), Richard Clanton (CHAIRMAN), Anne Newman (SECRETARY), Christopher Wheeler (BOARDMEMBER) and Norman Carlson (BOARDMEMBER); has exclusive mangment and control of Goe Group inc. and are responsible as individuals for any violation of constitutional rights violations caused by the management. 42 USC 1983, which provides that "every person" who under color of law, subjects a citizen to the deprivation of Federally protected rights shall be liable to that person. Also Johnson v Duffy, 588 F2d. 740 (1978), saying personal participation is not the only request for liability under the civil rights act of 1871, " A person subjects another person to deprivation of a Constitutional right, within the meaning of the civil rights act of 1871, if he dose an affirmative act, participates in anothers affirmative act, or omits to perform an act which is legally required to that causes the deprivation of which the complaint is made.

10. Because of a policy put in place by Warden Thompson the Plaintiff, was forced to choose on a daily basis between exercise and working toilets. For on or about 6, months after the Plaintiff's arrival at RCDC-III, if the Plaintiff chose to go outside for recreation he was denied access to working toilets and forced to endure the indignity and personal humiliation of having to urinate out in the open and on the ground like an animal when the need arose, which was often due to the large amounts of water one has to drink in order to tolerate ththe 100, plus degrees of heat that is so common in West Texas. Due to Mr. Thompson's policy of depriving the inmates locked in the large recreation yard even elementary sanitary facilities, the Plaintiff was forced on many occasions not only to relieve himself in the undignified, humiliating manner described above, but also endure the stench and health hazards associated with coming in contact at times with inch deep puddles of urine.

11. It's like in Masonoff v Dubois 853 F.Supp. 26 (D.Mass. 1994), saying at 28, " An 8th Amendment claim has both an objective component ( was there a sufficiently serious deprivation) and a subjective component (was the deprivation brought about in wanton disregard of the inmates rights), see also WILSON V Seiter, 501 US 294, 298, 111, S.CT. 2321-2324-25, 115, LED 2d. 271, (1991).

12. As to the objective component, a Court must measure, the challenged conditions of confinement against the evolving standards of decency that mark, the progress of a maturing society"

Rhodes v Chapman, 452, US 337, 346, 101, S.CT. 2392, 69,, LED

2d. 59, (1981) quoting, Trop v Dulles 356, US 86, 101, 78, S.CT.

590, 598, 2, LED 2d. 630, (1958).

    13. Masonoff at 29 " Those prison conditions which

" deprive inmates of the minimal civilized measure of lifes

necessities" constitute objective violations of the 8th. Amend-

ment prohibition of cruel and unusual punishment. Having a

sanitary place to dispose of one bodily waste is one such minimal

civilized measure of lives necessities."

    14. The Courts have held that an inmates right to adequate

and hygeinic means to dispose of his bodily waste is clearly

established. The Court has noted the health hazards brought

by the deprivation of elementary sanitation facilities in Daige

v Maggio, 719, F2d. 1310 (5th. Cir. 1983) at 1312, " As a safe-

guard against the gratuitous infliction of suffering, the 8th.

Amendment forbids confinement under conditions that can lead

to painful and torturous decease with no penological purpose.

We concluded over a decade ago that the 8th. Amendment forbids

deprivation of the basic elements of hygiene" we observe this

common thread woven through judicial condemnations of prison

conditions, noting in most cases the deprivation of facilities

for elementary sanitation." Also see Despain v. Uphoff 264,

F3d. 965 (10th. Cir. 2001) at 967," While prison toilets can

be unavailable for some period of time without violating the

8th. Amendment guarantee of cruel and unusual punishment, expo-

sure to human waste carries particular weight in the conditions

calculus because exposure to human waste evokes both health

concerns and he more general standards of dignity. USCA 8th.
Amendment.

15. Naranjo continues to endure undignified, unsanitary
and humiliating conditions while out in the large recreation
yard to this day. Rather than allow inmates access to indoor
plumbing in the Pod's Warden Thompson had portable Toilets brou-
ght into the large recreation yard on the day before a visit
by the American Civil Liberties Union in early December, 2009,
and they remain the only place for Naranjo and others inmates
to relieve themselves while out in the large recreation yard
to this day.

16. The portable Toilets are like giant Chamber Pot's
and they create an even worse health hazard than the puddles
of urine did. At least the urine eventually seeped into the
ground, were the portable Toilets are nothing more than stagnant
reservoirs of human waste, festering bacteria and contamination,
that's being spread through out RCDC-III, on a daily basis.
When Naranjo, or other inmates use the portable Toilets, they
have no way of cleaning themselves afterward, so when they handle
any exercise equipment or press the button on the water cooler
with there filthy hands they are spreading that contamination.

17. There is also an enormous Fly infestation at RCDC-
III, they are everywhere in the Dinning Room, Clinic waiting
area and the Dormitory and the portable Toilets coming in contact
stagnant reservoirs of human waste and spreading the contamina-
tion through out the facility on regular basis. The 8th Amend-
ment forbids confinement under conditons that can lead to
the spread of decease and the deprivation of the basic elements
of hygiene, yet that's being the case for Naranjo since his

arrival at RCDC-III, On April 17, 2009.

18. 42 USC 1983, provides a cause of action for mone-
tary damages and injunctive relief against any person who under
under color of law subjects any person to the deprivation of
any rights privileges or immunities secured by the Constitution.
Noting that even in the absence of phycical injury, Plaintiff
may prove actual damages under 1983, based on injuries such
as personal humiliation and mental anguish and suffering." See
Daskalea v District of Columbia, 227, F3d. at 444 (DC 2000)
and Carey v Piphus 435, US 247, 98, S.CT. 1042, 55, LED 2d.
252, (1978). Also see Despain v Uphoff, 265, F 3d. 974, (10th
2001) saying that " exposure to human waste even for 36, hours
would constitute a sufficiently serious deprivation as to violate
the 8th. Amendment.

NARANJO WAS DELIBERATELY CONFINED IN AN ENVIRONMENT THAT DENIED
HIM ACCESS TO ADEQUATE HEALTH CARE AND PROCEDURAL DUE PROCESS
AS GUARANTEED BY THE UNITED STATES CONSTITUTION:

19. Like all of RCDC-III's services or programs
the medical delivery system was not increased to meet the greater
demand placed upon it by the larger inmated population that
resulted from the deliberate increase to 166% of design capacity.
The medical delivery system remains under staffed, under trained,
under funded and deliberately plagued by fraud, which has resul-
ted in needless pain and suffering, mis-diagnosis and several
well documented deaths that contibuted to the riot on December
12, 2009, (exhibit R1).

20. The 10th circuit could of been speaking about
what's going on at RCDC-III, rather than Ramos v Lamm 639, F2d.

575 (10th Cir. (1980), when the Court explains," Deliberate indifference to inmate health needs may be proven by repeated examples of conduct by prison staff were negligent, id 52, or by proving there such systemic failures and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate health care."

20. When Naranjo, arrived at RCDC-III, on April 19, 2009, there was no attending physician on-site at the facility rather inmates were routinely diagnosed and proscribed controlled substances by physicians assistants. Currently RCDC-III, offers 40, hours a week of physician coverage to an inmate population of on or about 1,400, which the Court found to be inadequate. The Court explains that in order to provide minimally acceptable standards of health care. " There most be at least 4, hours a week of on-site coverage from a General Internist and General Surgeon, and 4, hours every other week from an Ear , Nose and Throat specialist and Orthopedic Surgeon. RCDC-III, offers no specialist coverage at all and inmates are routinely visit's to outside specialist. (Exhibit A1)

21. The Ramos Court explains that prisoners have more extensive Dental problems than the average citizen. Consequently dental care is one of the most important medical needs of inmates". The Court found that even 40, hours a week of on-site coverage by a Dentist was not enough for an inmate population of on or about 1,400, like RCDC-III's, yet inmates at this facility are offered only 16, hours a week of on-site coverage by the Dentist, who is only at RCDC-III, on weekends, attached

is a copy of his appointments for the weekend of 6-4-11, and

6-5-11, (Exhibit D).

22. On the last 3, wekends of December 2010, the entire

inmate population was scheduled for dental examinations, afford-

ing about 2, minutes, 11, seconds per examination. Naranjo,

missed his scheduled appointment and was sought out by Mr. Bull-

och (coordinator of case managment) and told to report to the

clinic within the hour, upon arriving at the clinic Naranjo,

was instucted again by Mr. Bullock, to stand in line with on

or about another 20, inmates and rather than Dr. Redell the

on-site Dentist, Naranjo, was instucted again by Bullock, to

allow a Mr. Portillo, an assistant nurse or orderly perform

the scheduled Dental examination. Naranjo, refused the sham

examination and explained to Bullock that 1. Portillo was not

aa Dentist and 2. Narnjo, would not participate in Bullock's

, Thompson's and Geo Group's scheme to defraud the Government.

It's an outrageous statutory and procedural due process violation

to try to involve Naranjo, in such a scheme and certainly action-

able under 42 USC 1983, and Naranjo, is willing even eager

to support his account of the events of that day with a polygraph

examination at the request of the proper authorities.

THOMPSON (WARDEN) CONSPIRED WITH GEO GROUP TO DEPRIVE NARANJO,

OF HIS RIGHT TO EQUAL TEATMENT AS GUARANTEED BY THE UNITED STATES

1. Naranjo, a legal permanent resident of the United

States, leaned upon arriving at RCDC-III that in order to repay

his debt or obligation to the Government he was now expected

to work for the benefit of Geo Group inc. a wholly private

and it,s shareholders while unfairly and illegally having

to compete with undocumented aliens for what ever low paying job may be available. See Hobly v Scott, 434, 291, (4th Cir. 2006), saying " It is uncontested thatGeo Group inc. is a wholly private corporation in which the Government has no stake in other than a contractual relaitionship."

2. Undocumented workers are employed through out the facility, and out number civilian workers at about a ratio of 30, to 1,. They run, maintain or support the operation of RCDC-III, a multi-million dollar enterprise at an average pay of 20¢ an hour.(Exhibit W1). In effect making it possible for Geo Group inc. to generate 16.4 miilion dollars in profits for it's shareholders in the first quarter of 2011,. Another effect of course is that it makes, Bobby Thompson (Warden), Arnulfo Gomez (Sheriff), George Zoly (CEO), Clarence Antony (Pres.), Richard Clanton (Chairman), Anne Newman (Sec.), Christopher Wheeler (Boardmember), and Norman Carlson (Boardmember), the largest exploiters (employers) of illegal aliens in West Texas.

3. 8 USCA 1324(a) makes it clear that employing undocumented aliens in the United States is illegal and paragraph (b) of the same statue includes Government agencies in the prohibition as well. Yet the aforementioned individuals and corporations seem to think the law dose not applie to them for some reason.

4. The forgoing crimes are an integral part of Geo Group's corporate culture and operations at RCDC-III, in effect placing Naranjo, in the unfair and illegal position of having to work for an on going criminal enterprise in order to pay

(14)

debt or obligation to the United States. Furthermore Naranjo,
will remain a resident of the United States what ever the final
outcome of his criminal case may be, and is personally affected
like every other resident is, when a private corporation like
Geo Group inc. takes upon itself to ignore the immigration,
labor and tax laws of the United States. Inasmuch as it always
translates into higher taxes and reduced Government services
for the residents of the country.

    5. All of the aforementioned statutory violations
are also violations of Naranjo's Federally protected right to
procedural due process and equal treatment and actional under
42 USC 1983, for compensatory and punitive damages. See Harden
vv Pataki 320, F3d. at 1301, citing Carey v Piphus, 435 US at
266, 98 S.CT. 1042, 55 LED 2d. 252 (1978). Saying the denial
 of procedural due process is absolute and is actionable for
actual damages without proof of actual injury. Thus the Naranjo,
may be able to recover nominal compensatory, even punitive
damages for constitutional and statutory violations he is able
 to prove.

NARANJO'S BEING DENIED EQUAL TREATMENT AND PROTECTION AS
GUARANTEED BY THE UNITED STATES DUE TO HIS RACE:

    1. It can not be disputed that Naranjo, was brought
to RCDC-III, a processing and deportation center for undocumented
minority aliens because of his own minority status (Hispanic)
a legal permanent resident rather than a United States citizen.

    2. It is also a fact that Naranjo's right to equal
treatment and procedural due process were violated for the same
reason his race Hispanic, (Cuban). Naranjo, was brought to RCDC-III

(15)

prior to having exhausted all his appellate options a fact that
is still true today two and a half years after having arrived
at RCDC-III. That fact prevents Naranjo, from being processed
by Immigration Coustom Enforcement (ICE), because the final
determination of his criminal case is still unknown.

    3. Naranjo, made these facts known to Warden Thompson,
in the attached inmate request forms. Unfortunately Naranjo's
attempt at clarification resulted in Thompson's standard,
bafoonary and verbal gymnastic's in his attempt at confusing
ignorant hispanic. It is a well known fact at RCDC-III, that
Geo Group and RCDC-III, staff consider the inmates at RCDC-III,
ignorant wet backs who lack the language skills, education or
knowledge to complain about there civil rights. And that is
the main reason Naranjo has been forced to endure the deliberate
and wonton disregard of his Constitutional rights as detailed
in the forgoing complaint.

    4. The civil rights abuses Naranjo, has been forced
to endure certainly would never of been tolerated at a similarly
situated institution housing Americans. Yet at RCDC-III, where
the inmate population is made up of  98% who either do'nt know
about there civil rights or believe there's nothing they can
do about the abuses and disrimination because there being deport-
 ed, the deliberate and wonton disregard for the inmates civil
rights is an integral part of the institutional and at RCDC-
III, the corporate culture as well. Even the Bureau Of Prisons
inspectors that visit RCDC-III, on regular basis ignore, the
overcrowding, lack of emergency doors, 90 to 1 inmate  to guard

lack of medical service, and legal library and the portable
Toilets. Which certainly would never be the case at a Bureau
Of Prisons institution.

  5. Naranjo, like all prisoners is protected under
the 14th. Amendment clause from invidious discrimination based
on race. See Brand v Motely 526, F3d. at 924 (6th. Cir. 2008)
also Wolf v McDonnell, 418, US 539, 556, 94, S.CT. 2963, 41,
LED2d. 935, (1974), citing Lee v Washington, 390 US 333, 88,
S.CT. 994, 19, LED2d. 1212, (1968) " An inmate like everyone
else has the right to be free of Government sponsored race discr-
imination unsupported by compelling interest." See Johnson
v California 543, US 499, 509, 125. S.CT. 1141, 160, LED2d,
949, at 508-15, (2005).

  6. To state a claim Naranjo, need only allege suffic-
cient facts to show that the state actor discriminated against
him because of membership in a protected class. See Herron v
Harrison 203, F3d. 410, 417, (6th. Cir. 2000), also Johnson
v California, 207, F3d. 650, 655, (9th Cir. 2000).

**NARANJO, BRINGS SUITE AGAINST THE FOLLOWING PERSONS AND ENTITIES
BOTH IN THERE PERSONAL AND PROFESSIONAL CAPACTY:**

  1. Naranjo, request the following compensatory,
punitive and injunctive relief, due to the respondants deliberate
racially discriminatory practices, gross negligence and reckless
indifference with wonton disregard for Naranjo's Federally prot-
ected rights as detailed in the forgoing complaint; Geo Group
inc.$1.5,million in compensatory,$3.5,million in punitive damages
Bobby Thompson,$1.5,million in compensatory, $3.5,million, in
punitive damages; Arnulfo Gomez,$1.5 million in compensatory,$3.5
million in punitive damages; George Zoly,$1.5 million in compens-

atory, $3.5, million in punitive damages; Clarence Antony,$1.5

million in compensatory $3.5 million in punitive damages;

Richard Clanton $1.5 million in compensatory $3.5 milliom in

punitive damages; Anne Newman, $1.5 million in compensatory,

43.5 million in punitive damages; Christopher Wheeler,$1.5 mill-

ion in compensatory and $3.5 million in punitive damages;

Norman Carlson,$1.5 million in compensatory $3.5 million in

punitive damages;

**NARANJO ALSO REQUEST THE FOLLOWING INJUNTIVE RELIEF:**

    1. Reduction of the inmate population to 100% of design

capacity within the year; 2. Emergency doors should be installed

in all Dormitory; 3. Smoke alarms and exhaust fans should be

rrepaired and kept in working order; 4. Access to working Toilets

should be granted immediately to all inmates while out in the

rrecreation yard and the Portable Toilets should be removed

immediately; 5. Geo Group inc. it's board of directors, or empl-

oyees should immediately  cease and disist from employing illeg-

al undocumented aliens to run, maintain or support the operation

of RCDC-III; 6. Medical staff should be increased to include,

40, hours a week of on-site Dentist coverge, 4, hours a week

on-site coverage by a general Internist and surgeon, and 4,

hours every other week of on-site coverage by an Ear, Nose and

Throat specialist and Orthopedic Surgeon:

**NARANJO, REQUEST THE APPOINTMENT OF A TRAINED ATTORNEY:**

    1. Naranjo, is not a trained attorney, and request

this honorable Court appoint a competent Attorney to perfect

and protect his claim. This is a complex case because it involves

Medical issues that may require expert testimony and involves

several several different legal claims, that require the discov-

ery of documents and deposition of several witnesses. Naranjo,

has neither the legal background or education to persue this

claim properly without the assistance of counsel and therefore

respectfully request the appointment of Counsel.


### DECLARATION UNDER PENALTY OF PERJURY:

I, CERTIFY UNDER PENALTY OF PERJURY THAT THE INFORMATION CONTAIN-

ed in the forgoing complaint is true and correct to the best

of my personal knowledge, pursuant to title 18 USC 1621, 3571.



Respectfully submitted:


Mario Naranjo
30472-004
Reeves County Detention Center,3
P.O.BOX 2038
Pecos Texas 72770-2038          Date, September __15__ 2011

Mario Naranjo # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos Texas, 79772-2038

### DECLARATION OF LUCIO MORA-Tarula

I, Lucio Mora-Tarula declare herein the following under penalty of perjury.

1. I am over the age of 18, and competent to provide testimony in a Court of law.

2. I arrived Reeves County Detention Center on April 13, 2010.

3. I was involved in a car accident 1977, that left me hand-i-capped, with severe injuries to both my left and right hips and right shoulder.

4. The injuries keep me in severe pain which is not being treated properly at RCDC-III, by the resident physician who is not an Orthopedic specialist.

5. I have requested and been denied access to an outside special-ist on numerous occasions since there are no specialist on staff at this facility.

**I,declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge:**

Executed this day 15 of September 2011, *Lucio mora Traula*

Lucio Mora-Tarula

06966-359

Mario Naranjo, # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos, Texas, 79772-2038

### DECLARATION OF DHYMITRUY BOURYIOTIS

I, Dhymitruy Bouryiotis, declare herein the following under penalty of perjury.

1. I am over the age of 18, and competent to provide testimony in a Court of law.

2. Since my arrival at Reeves County Detention Center 3, on November 24, 2009, I, have been forced to live in Dormitories that provide inmates with on or about 22.75, square feet of personal sleeping space.

3. I, have also been housed in Dormitories that lack Fire Extin-guishers, or emergency exit doors leading directly from the iinmate living area out of the building in case of fire or other catastrophe.

4. I, have also been housed in Dormitories where the inmate living area and the Bathrooms and there open toilets are separate by about 10, inches an unsanitary situation forbidden by the Bureau of Prison Rules.

**I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE:**

Executed this day __08__ of August 2011,_____

Dhymitruy Bouryiotis

38988-086

MARIO Naranjo # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos, Texas, 79772-2038

## DECLARATION OF MATTHEW GLENROY

I, Matthew Glenroy, declare herein the following under penalty of perjury.

1. I am over the age of 18, and competent to provide testimony in a Court of law.

2. Since my arrival at Reeves County Detention Center 3, on August 29, 2008, I have been forced to live in Doritories that provide inmates with on or about 22.75 square feet of personal sleeping space.

3. I, have also been housed in Dormitories that lack Fire Extin-guisher, or emergency exit doors leading directly from the inmate living area out of the building in case of Fire or other cattastrophe.

4. I, have also been housed in Dormitories where the inmate living area and the Bathrooms and there open toilets are separate by about 10, inches an unsanitary situation forbidden by the Bureau of Prisons own rules.

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE:

Executed this day 13th of August 2011,

Matthew Glenroy

29393-069

Mario Narnjo # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos Texas 79772-2038

## DECLARATION OF JOSE HENRIQUES CHICAS

I, Jose Henriques Chicas, declare herein the following under penalty of perjury.

1. I, am over the age of 18, and competent to provide testimony in a Court of law.

2. I, have been an inmate at Reeves County Detention Center 3, since Febuary 23, 2011,.

2. I, stepped on a land mine while on patrol for the Salvadorian army in 1989.

3. I, recieved severe damage to my left Ankle, Heel and Foot.

4. As a result of my injuries my left foot was left 3,quarters of an inch shorted than my right and severely mangled, and I live in constant pain.

5. I, have requested and been denied both Orthopedic foot wear and insoles which have been provided at other institutions at which I, have been incarserated with success.

6. Because there is no on-site coverage by an Orthopedic Doctor at Reeves County Detention Center 3, I, have requested and also been denied access to an outside specialist.

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE:

Executed this day____of August 2011,_____

Jose Henriques Chicas

34057-279

Laurent E. Barnabe - 38693-048

Reeves County Detention Center III

P.O. Box 2038

Pecos, Texas 79772-2038

### DECLARATION OF LAURENT E. BARNABE

**I, Laurent E. Barnabe, declare herein the following under penalty of perjury.**

1. I, am over the age of 18, and competent to provide testimony in a Court of law.

2. I, have been incarcerated since October 2007 and am now an inmate at Reeves County Detention Center since July 19, 2010.

3. During my last medical examination, Dr. Whitehorn informed me that I had "stage three" liver disease.

4. Prior to coming to RCDC III I had had a full series of tests including blood, urine, X-ray, EKG, dental examination on a regular basis. I received the same tests at RCDC III, the only medication I received was for high blood pressure.

5. When Dr. Whitehorn told me of my serious health situation, I asked him what course of treatment would be taken. He said that there was nothing to be done. I was shocked. I asked if there were dietary consideration, exercise, medicine, therapy, he said there was nothing to do. I asked if there was any advice he might consider giving me. He said there nothing to be done.

6. **I am a 72 year old person I thought was in good health, with a blood pressure problem well in hand.** I was devastated, now I had a deadly disease with seemlingly no hope.

**I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE:**

Executed this day the 13th of September 2011 _____

L. E. Barnabe - 38693-048

Mario Naranjo # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos, Texas, 79772-2038

## DECLARATION OF CRUZ GENARO

I, Cruz Genaro, declare herein the following under penalty of
perjury.

1. I, am over the age of 18, and competent to provide testimony
in a Court of law.

2. I, have been a inmate at Reeves County Detention Center 3,
since Febuary 14, 2008, and I, personally experienced and wit-
nessed that inmates were denied access to toilets for hours
at a time while out in the recreation yard, from on or about
December 12, 2008, till early December 2009,.

3. I, have witnessed inmates having to urinate out in the open
and on the ground , for lack of any other place to relieve them-
selves.

4. I, witnessed that on or about early December 2009, portable
toilets were brought into the large recreation yard and they
remain the only place for inmates to relieve themselves.

5. I, also have experienced and witnessed that neither soap
or any other way to clean ones self is provided at the portable
toilets.

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Executed this day _9_ of August, 2011, _Cruz G_

Cruz Genaro

40326-048

Mario Naranjo, # 30472-004

Reeves County Detaention Center 3

P.O.BOX 2038

Pecos, Texas, 79772-2038

## <u>DECLARATION OF JAIME QUINTERO</u>

I, Jaime Quintero, declare herein the following under penalty
of perjury.

1. I am over the age of 18, and competent to provide testimony
in a Court of law.

2. Since my arrival at Reeves County Deyention Center 3, in Febu-
ary 2009, I have been forced to live in Dormitories that provide
inmates with on or about 22.75 square feet of personal sleeping
space.

3. I, have also been housed in Dormitories that lack Fire Exting-
uishers, or emergency exit doors leading directly from the inmate
living area out of the building in case of fire or other catastro
phe.

4. I, have also been housed in Dormitories where the inmate
living area and the Bathroom an it's Toilets are separated by
about 10, inches an unsanitary situation forbiden by the Bureau
of Prisons rules.

**I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE:**

Executed this day 9 of August, 2011,

Jaime Quintero

37002-053

Mario Naranjo # 30472-004

Reeves County Detention Center 3

P.O.BOX 2038

Pecos, Texas, 79772-2038

## DECLARATION OF HECTOR ROZO

I, Hector Rozo, declare herein the following under penalty of perjury.

1. I am over the age of 18, and competent to provide testimony in a Court of law.

2. I, have been an inmate at Reeves County Detention Center 3, since April 14, 2009, and personally have experienced and witnessed that inmates were denied access to toilets for hours at a time while locked in the large recreation yard at Reeves County Detention Center 3,.

3. I, have witnessed inmates having to urinate out in the open and on the ground, for lack of any other place to relieve them- selves.

4. i, witnessed that on or about early December 2009, portable Toilets were brought into the large recreation yard and remain the only place for inmates locked in the large recreation yard to relieve themselves, but there not provided with a way to wash there hands afterward.

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE:

Executed this day 9 of August 2011, HECTOR ROZO.

Hector Rozo

52526-054

Mario Naranjo, # 30472-004

Reeves County Detention Center 3

P.O BOX 2038

Pecos, Texas, 70772-2038

## DECLARATION OF ARTURO FERNANDEZ

I, Arturo Ferandez, declare herein the following under penalty
of perjury.

1. I am over the age of 18, and competent to provide testimony
in a Court of law.

2. I have been an inmate at Reeves County Detention Center 3,
  since May 16, 2008, and I, have personally experienced and wit-
  nessed that inmates were denied access to toilets for hours
  at a time while out in the recreation yard, from on or about
  December 12, 2008, till early December 2009,.

3. I have witnessed inmates having to urinate out in the open
and on the ground, for lack of any other place to relieve
themselves.

4. I, witnessed that on or about early December, 2009, portable
toilets were brought into the large recreation yard and remain
the only place for inmates to relieve themselves.

5. I, also have experienced and witnessed that neither soap
or any other way to clean ones self is provided at the portable
toilets.

I, DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE
AND CORRECT TO THE BEST OF MY KNOWLEDGE:

Executed this day 9 of August 2011, _____

                                        Arturo Fernandez

                                        15767-045

Mario Naranjo
30472-004
RCDC-3
P.O. Box 2038
Pecos, TX, 79772.



UNITED STATES
POSTAL SERVICE

RECEIVED
DAMAGED

1006          79772

USPS TRACKING NUMBER

9502 5104 8525 1266 4466 38

U.S. POSTAGE
PAID
PECOS, TX
79772
SEP 23, 11
AMOUNT
$0.00
000-08525-03



PRIORITY
MAIL

UNITED STATES POSTAL SERVICE

Visit us at usps.com

Clerk of Courts.
United State Court House
401 S. Cedar St.
Pecos, TX, 79772.


